| | |
|---|---|
| 1 | RICHARD C. AUERBACH, S.B. #100174 |
| | TROVILLION, INVEISS & DEMAKIS |
| 2 | A Professional Corporation |
| | 50 E. Foothill Blvd., Suite 203 |
| 3 | Arcadia, CA 91006 |
| | Telephone: (626) 247-1180 |
| 4 | Facsimile: (626) 247-1184 |



**FILED**

DEC 0 8 2009

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

5  Attorneys for Creditor CFC INVESTMENT COMPANY

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.: 09-31504 TEC |
| | ) | |
| CFC INVESTMENT COMPANY, | ) | CHAPTER 11 |
| | ) | |
| Creditor, | ) | **REQUEST BY CREDITOR, CFC INVESTMENT COMPANY TO TRUSTEE TO ISSUE NOTICE OF TRUSTEE'S INTENT TO ABANDON INTEREST AND ASSETS** |
| v. | ) | |
| | ) | |
| FEED THE METER, LLC. | ) | |
| | ) | |
| Debtor(s). | ) | |
| | ) | **NO HEARING REQUIRED UNLESS OBJECTIONS FILED PURSUANT TO LOCAL RULE** |

TO: ALL CREDITORS AND OTHER PARTIES IN INTEREST

COMES NOW, Creditor, CFC Investment Company, pursuant to Section 554(a) of the Bankruptcy Code (11 U.S.C., Section 554(a)) and Local Bankruptcy Rule 9013-1(7)(a), hereby request the trustee of the above-entitled Debtor, to issue a Notice of Intent to abandon the following-described property as burdensome and of inconsequential value to the estate, unless within 15 days from the date of service of the Notice by the trustee, a Creditor or other party in interest files a written Objection and Request for Hearing with the Clerk of the Bankruptcy Court, located at 235 Pine Street, 19th Floor, San Francisco, California 94120, and serves a copy of such request on the U.S. Trustee at the U.S. Trustee's Office located at 235 Pine Street, Suite 850, San Francisco, California 94104.

**REQUEST BY CREDITOR CFC INVESTMENT COMPANY TO TRUSTEE
TO ISSUE NOTICE OF TRUSTEE'S INTENT TO ABANDON INTEREST AND ASSETS**

The grounds upon which this Request is being made is as follows:

1. Creditor, CFC Investment Company entered into a Master Equipment Lease Agreement with Feed the Meter, LLC., dba Askew Grill on October 24, 2005. Attached as Exhibit "A", is a true and correct copy of the Master Equipment Lease Agreement.

2. Serving as collateral for the Lease Agreement are the following pieces of equipment: Two Backbar refrigerator glass doors; one Bev Air number DD78 draft beer cooler, one five well electric steamtable 240 volts; one 200 volt six-foot electrical cord control knobs, indicator and lights.

3. Subsequent to entering into the Master Equipment Lease Agreement, CFC Investment Company filed a UCC Financing Statement to secure the equipment under the Lease. Attached hereto marked Exhibit "B", is a true and correct copy of the UCC Financing Statement filed with the California Secretary of State on November 2, 2005.

4. Attached hereto marked Exhibit "C", is the UCC filing acknowledgment with the Secretary of State, dated November 4, 2005. Attached hereto marked Exhibit "D", is a description of the restaurant fixtures leased under the Master Equipment Lease Agreement.

**WHEREFORE**, Creditor, CFC Investment Company, hereby requests the U.S. Trustee issue a Notice of Intent to abandon the interest in the assets to permit the Creditor to retain possession of the equipment under the Lease Agreement as the equipment does not fall under the protection of the U.S. Bankruptcy laws based on the Creditor's filing of the UCC Financing Statement with the Secretary of State.

Dated: December 7, 2009

Respectfully submitted,

TROVILLION, INVEISS & DEMAKIS

BY [signature]

RICHARD C. AUERBACH
Attorneys for Creditor, CFC INVESTMENT COMPANY

REQUEST BY CREDITOR CFC INVESTMENT COMPANY TO TRUSTEE
TO ISSUE NOTICE OF TRUSTEE'S INTENT TO ABANDON INTEREST AND ASSETS
- 2 -

Case: 09-31504   Doc# 70   Filed: 12/08/09   Entered: 12/09/09 14:49:21   Page 2 of 16

EXHIBIT "A"

# CFC INVESTMENT COMPANY
A Subsidiary of Cincinnati Financial Corporation

P.O. BOX 145496
CINCINNATI, OHIO 45250-5496
(513) 870-2203

## MASTER EQUIPMENT LEASE AGREEMENT

THIS EQUIPMENT LEASE AGREEMENT, hereinafter referred to as "Agreement," by and between CFC Investment Company, a corporation organized and incorporated under the laws of the State of OHIO, with office address at 6200 South Gilmore Road, Fairfield, Ohio 45014-5141 (hereinafter called, together with its assigns, if any, "Lessor"), and <u>Feed The Meter, LLC dba/Asgew Grill</u>, a <u>Corporation</u> organized and <u>Incorporated</u> under the laws of the State of <u>California</u>, with its residence, mailing address, and chief place of business at <u>3350 Steiner Street, San Francisco, CA 94123</u> (hereinafter called "Lessee");

### WITNESSETH:

I. **LEASING:** Subject to the terms and conditions set forth below, Lessor agrees to lease to Lessee and Lessee agrees to hire from Lessor such unit or units of equipment, including all components, parts, additions, accessions, attachments and replacements, hereinafter referred to as "Equipment," described in any Schedule attached hereto and hereby made a part hereof and any Schedule which may be executed from time to time by the parties hereto and thereby become a part hereof. Lessee agrees and acknowledges that it is the intent of both parties to this Master Lease that it qualify as a statutory finance Lease under Article 2A of the Uniform Commercial Code. Lessee acknowledges and agrees that Lessee has selected both: (1) the Equipment; and (2) the supplier from whom Lessor is to purchase the Equipment. Lessee acknowledges that Lessor is to purchase the Equipment. Lessee acknowledges that Lessor has not participated in any way in Lessee's selection of the Equipment or of the supplier, and Lessor has not selected, manufactured or supplied the Equipment. LESSEE IS ADVISED THAT IT MAY HAVE RIGHTS UNDER THE CONTRACT EVIDENCING THE LESSOR'S PURCHASE OF THE EQUIPMENT FROM THE SUPPLIER CHOSEN BY LESSEE AND THAT LESSEE SHOULD CONTACT THE SUPPLIER OF THE EQUIPMENT FOR A DESCRIPTION OF ANY SUCH RIGHTS. To accept Equipment, Lessee will sign and deliver to Lessor a true and correct Certificate of Delivery and Installation in a form provided by Lessor. When Lessor has confirmed that all of its requirements and conditions have been met, it will pay the supplier for the Equipment specified in the accompanying schedule.

II. **TERM, RENT, AND PAYMENT:**

(a) The lease of and rent for Equipment shall commence on the day specified in the Schedule pertaining thereto and shall continue for the period specified as the "term" in said Schedule. If any term be extended or any renewal option or options be exercised, the word "term" or "period," as used herein, shall be deemed to refer to all extended and renewal terms; and all provisions of this Agreement shall apply during any extended and renewal terms, except as may be otherwise specifically provided in this Agreement or in any subsequent written agreement of the parties.

(b) Rent for Equipment shall be in the amount set forth in the Schedule and shall be payable in advance at the times set forth therein. Lessee shall report and pay promptly any and all taxes, license fees, assessments, and public and private charges (including penalty and interest, if any) due, assessed, or levied against Equipment or the ownership, purchase, rental, or use thereof, and reimburse Lessor or its assigns upon receipt of written request for reimbursement for any taxes assessed against Lessor or its assigns by reason of the ownership, purchase, rental, or use of Equipment, or by reason of Lessor's sale thereof to any third party, if such sale eliminates the necessity of paying tax on the ownership, purchase, rental, or use of Equipment; and Lessee will, on request of Lessor, submit to Lessor written evidence of Lessee's payment thereof. Lessee shall reimburse Lessor on a proportionate basis for any such taxes, fees, assessments, and charges payable subsequent to the term of lease.

(c) Rent shall be paid to Lessor at its office address stated above, except as otherwise directed by Lessor, and shall not be prorated for any cause or reason except as herein specifically provided. Initial term advance rental shall be due in the specified amount upon acceptance by Lessor of each Schedule providing for such rental. Subsequent rent payments shall be due periodically in advance on the same day of the month as the lease commencement date specified in the Schedule. In no event shall any advance rental be refunded to Lessee. Lessor shall apply advance rentals received upon acceptance of Schedules to the first rent payment of the initial term of lease of the Equipment to which such Schedule applies, and the balance of the advance rentals shall be applied to the final rental payments of the initial term of lease of said Equipment.

INITIALLED BY _____

Page 1 of 5

(d) If any rental is not paid within ten (10) days after due date, Lessee agrees to pay a late charge of five cents (5¢) per dollar on, and in addition to, the amount of such rental but not exceeding the lawful maximum, if any (an amount which Lessee agrees is a reasonable approximation of the internal costs Lessor will incur as a result of Lessee's delay in payment), plus interest on the payment from when it was due until when it was received at the maximum legal rate.

## III. FILINGS; POWER OF ATTORNEY:

Lessee will execute and deliver to Lessor at Lessor's request all financing statements, UCC-1, continuation statements, and other documents that Lessor may reasonably request, in form satisfactory to Lessor, to perfect and maintain Lessor's interest in the equipment and to fully consummate all transactions contemplated under this agreement. Lessee hereby irrevocably makes, constitutes and appoints Lessor (or any of Lessor's officers, employees, or agents designated by Lessor) as Lessee's true and lawful attorney with power to sign the name of Lessee on any such documents. This power, being coupled with an interest, is irrevocable until all obligations of Lessee have been fully satisfied.

## IV. REPORTS:

(a) Upon demand Lessee will advise Lessor where Equipment is located and permit Lessor to examine the same.

(b) Lessee agrees that Lessor shall not be responsible for any loss or damage to Lessee, its customers, or anyone else, caused by Equipment, failure or defect of Equipment, or otherwise. Nevertheless, Lessee will immediately notify Lessor of each accident arising out of the alleged or apparent improper manufacturing, functioning, or operation of any Equipment; the time, place, and nature of the accident and damage, the names and addresses of parties involved, persons injured, witnesses and owners of property damaged, and such other information as may be known, and promptly advise Lessor of all correspondence, papers, notices, and documents whatsoever received by Lessee in connection with any claim or demand involving or relating to improper manufacturing, operation, or functioning of any Equipment or charging Lessor with liability, and together with Lessee's employees, Lessee will investigate and defend all such claims and recover damages from any third persons liable therefor.

(c) Lessee will notify Lessor in writing, within ten (10) days after any day on which any tax or other lien shall attach to any Equipment, of the location of such Equipment, on such day.

(d) Lessee will notify Lessor forthwith in writing of the location of any Equipment moved by Lessee from the place where delivered to Lessee or from the location specified in this Agreement or any Schedule or any subsequent agreement executed.

(e) Upon request Lessee will deliver to Lessor in a form satisfactory to Lessor duplicate copies of Lessee's most recent financial reports, including Lessee's most recent annual report and balance sheet and profit and loss statement, certified to by either a recognized firm of Certified Public Accountants or by the chief fiscal officer of Lessee.

## V. USE AND OPERATION:

(a) Lessee shall not assign, sublet, mortgage, hypothecate, or alter any of the equipment leased hereunder or any interest in this Agreement, nor shall Lessee remove any of the Equipment from the specified place of Equipment location, without the prior written consent of Lessor, and any attempt to so assign, sublet, mortgage, hypothecate, alter, or remove shall constitute an act of default hereunder and such assignment, sublease, mortgage, or hypothecation shall be void and without effect. Lessee shall keep items leased hereunder free and clear from all claims, liens, and encumbrances whatsoever. Lessee agrees to save and hold Lessor harmless from and against all claims, costs, expenses, damages, and liabilities, including personal injury, death, or property damage claims arising or in any manner occasioned by Equipment, its operation, or use.

(b) Lessee assumes and shall be solely responsible for the entire risk and each and every cause or hazard of loss of any and all Equipment, whether arising through operation or otherwise.

## VI. SERVICE:

(a) Lessee will at its sole expense at all times maintain Equipment in good operating order, repair, condition, and appearance and keep Equipment protected from the elements, except during use in the normally contemplated manner. Lessee shall, if at any time requested to do so by Lessor, affix in a prominent position on each unit of Equipment plates, tags, or other identifying labels showing ownership of Equipment by Lessor.

(b) You understand that Lessor and the Vendor are two separate and independent companies and that neither the vendor nor any other person is Lessor's agent. You agree that no representation, maintenance contract, guarantee or warranty by the Vendor or other person is binding on Lessor, and no breach by the Vendor or

INITIALLED BY _(initials)_

other person will excuse your obligations to Lessor. You also understand that only an officer of Lessor is authorized to waive or alter any of the terms of this Lease.

(c) If the equipment does not work as represented by the Vendor, or if the Vendor or any other person fails to provide any service, or if the equipment is unsatisfactory for any other reason, you will make any such claim solely against the Vendor or other person and will make no claim against Lessor.

(d) If for any reason the Vendor or manufacturer goes out of business or for any reason cannot perform maintenance or warranty work, you agree that Lessor has no responsibility to perform maintenance or warranty work and any claims need to be made against the Vendor or manufacturer or their successors.

VII. **INSURANCE:** Lessee bears the entire risk of loss of the Equipment from any cause whatsoever until it is returned to Lessor. Lessee shall procure at its own expense and maintain in full force and effect throughout the term of this lease at Lessee's expense in responsible insurance companies acceptable to Lessor the following insurance: (1) coverage against loss and/or damage to the equipment from every cause whatsoever, in an amount not less than the total rent payable hereunder, insuring Lessor and Lessee as their interests may appear, and (2) public liability coverage against personal injury, death, and property damage caused by or in any way connected with the equipment, in an amount acceptable to Lessor under a policy naming the Lessor as an additional insured. In no event shall the public liability coverage be less than $500,000 Combined Single Limit for Bodily Injury and Property Damage. Said policies shall provide that such insurance may not be altered or cancelled by the insurer until after ten (10) days' written notice to Lessor. Satisfactory evidence of insurance in the form of certificates, together with appropriate loss payable clauses, shall be delivered to Lessor. In the event of damage to or loss, secretion, destruction, or theft of Equipment, or any portion of Equipment, whether in whole or in part, Lessee will pay to Lessor, on the next rental payment date the sum of (1) all unpaid rent and other amounts due for the Equipment on or before that date plus (2) the present value of the Equipment discounted monthly to the date of payment at 5% per annum of all unpaid rental payments to become due for the Equipment during its lease term and an assumed residual value at the expiration of the lease term of 20% of the Equipment's total cost. Lessee hereby appoints Lessor as Lessee's attorney-in-fact to make proof of loss, and claim for, receive payment of and execute or endorse all documents, checks, or drafts in connection with payments made as a result of such insurance policies.

VIII. **RETURN OF EQUIPMENT:** Upon termination of lease by expiration of the period thereof or upon termination for any other cause, Lessee will, at its own cost and expense, promptly return Equipment to Lessor at an address specified by Lessor, in same condition as received, reasonable wear and tear and normal depreciation excepted. Lessee will pay for any repairs required to place Equipment in its original condition, reasonable wear and tear and normal depreciation excepted. Lessee shall, without unreasonable delay, cause Equipment to be assembled and crated at its expense and delivered to any carrier designated by Lessor for shipment to such location as Lessor shall direct. Lessee will be responsible for all shipping expenses.

IX. **DEFAULT:**

(a) If Lessee breaches its obligation to pay rent when due and fails to cure said breach within ten (10) days, or if Lessee breaches any of the terms hereof or any of the terms of any Schedule hereunder, or if Lessee becomes insolvent or ceases to do business as a going concern, if the Equipment or any part of it be abused, illegally used, or misused, or if Lessee makes an assignment for the benefit of creditors, or if a petition in bankruptcy or for arrangement or reorganization be filed by or against Lessee, or property of Lessee be attached or a receiver be appointed for Lessee or any of Lessee's property or whenever Lessor may deem the rentals or Equipment insecure, it will be considered an Event of Default and all term rentals for Equipment shall at the option of Lessor and without notice be accelerated and become due and payable forthwith, including all other charges, such as late charges and interest which is due and owing, and Lessee hereby authorizes Lessor to enter with or without legal process any premises where Equipment may be and take possession thereof. Lessee will, upon the Event of Default at request of Lessor, assemble Equipment and make Equipment available to the Lessor, in whole or in part as requested, at such place or places designated by the Lessor as are reasonably convenient to both Lessee and Lessor. To the extent not forbidden by law, Lessor may, but shall not be required to, sell Equipment at private or public sale, in bulk or in parcels, with or without notice, without having the Equipment present at the place of sale, and Lessor may bid and purchase; or Lessor may, but shall not be required to, lease or otherwise dispose of all or part of the Equipment; and Lessor may use Lessee's premises for any or all of the foregoing without liability for rent, costs, damages, or otherwise. The proceeds of sale, lease, or other disposition, if any, shall first be applied to all costs and charges and expenses incurred in taking, removing, holding, repairing and selling, leasing, or otherwise disposing of Equipment; then, to pay all sums remaining unpaid hereon which shall include unpaid rents for the balance of the initial term of lease of Equipment. Lessee agrees to pay any deficiency forthwith. Interest after acceleration shall be at the rate of 1/30 of 1% per day but not to exceed the maximum lawful rate. All remedies herein are cumulative; and any or all thereof may be exercised in lieu of or in addition to any remedies at law, in equity, or under statute. Lessee waives demand of performance and notice of sale or other disposition. Lessee waives place of sale or other disposition and manner and place of any advertising. If after default this Agreement is placed in the hands of an attorney for collection of unpaid rent or enforcement of any other right or remedy of Lessor, Lessee shall pay as

INITIALLED BY _/s/_

Case: 09-31504   Doc# 70   Filed: 12/08/09   Entered: 12/09/09 14:49:21   Page 6 of 16

reasonable attorneys' fees twenty per cent (20%) of the rental then remaining unpaid or of the value of Equipment, whichever is greater, if such attorneys' fees are permitted by law, or if prohibited by law, such lesser sum as may be permitted. Waiver of any default shall not be a waiver of any other or subsequent default.

(b) Any default under the terms of any lease agreement or Schedule executed by and between Lessor and Lessee may be declared by Lessor to be a default under the terms of any other lease agreement or Schedule by and between Lessee and Lessor.

(c) No delay and/or omission to exercise any right, power or remedy accruing to Lessor upon any breach or default by Lessee under this Lease shall impair any such right, power or remedy of Lessor, or shall be construed as a waiver of any such breach or default, or of any similar breach or default thereafter occurring nor shall any waiver of a single breach or default be deemed a waiver of any subsequent breach or default. All waivers under this Lease must be in writing and shall be effective only to the extent specifically set forth therein.

X. **ASSIGNMENT:** Lessee acknowledges and understands that Lessor may assign this Agreement or any Schedule or part hereof to a bank or any other lending institution or any other person, organization, or agency; and Lessee shall (1) recognize any such assignment, (2) accept the lawful demands of such assignee, (3) surrender assigned Equipment only to such assignee, (4) pay all rent payable hereunder and do any and all things required of Lessee hereunder, notwithstanding any default of the Lessor or the existence of any offset between Lessor and Lessee, and (5) not require any assignee of the Agreement to perform any duty, covenant, or condition required to be performed by Lessor under the terms of this Agreement.

XI. **DELIVERY OF EQUIPMENT TO LESSEE:** Equipment shall be shipped directly from the supplier thereof to the Lessee. Lessee agrees to accept such shipments and the parties agree that their rights and obligations under this Agreement shall not be affected by any delay in shipment by suppliers caused by circumstances beyond their control, including but not limited to acts of God, fire, flood, war, government regulations, directions or request, accidents, or labor trouble. Lessee further agrees that Lessor shall not be liable for any loss or damage by reason of delay in shipment or delivery caused by any of the foregoing or any other circumstances. Lessee agrees to lease Equipment for the term and at the rental set forth in the Schedules and to pay rent when due irrespective of any claims, demands, set-offs, actions, suits, or proceedings that it may have or assert against Lessor or any supplier or manufacturer of Equipment or any portion thereof, or any one or more others. Lessor shall have no liability to Lessee in the event any supplier, manufacturer, or one or more others fail to perform any obligations at any time due to Lessor and/or Lessee.

XII. **WARRANTY OF QUIET ENJOYMENT:** As long as Lessee is not in default, Lessor will not interfere with Lessee's possession, use and quiet enjoyment of the Equipment during the lease term or any renewal term.

XIII. **MISCELLANEOUS:**

(a) The Master Lease and Schedules are intended by the parties to be a true lease and not a sale of Equipment. Nothing herein contained shall give or convey to Lessee any right, title, or interest in and to any equipment leased hereunder except as a Lessee. The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances (including strikes and lockouts), war, acts of God, fires, storms, accidents, governmental regulations, or interference or any cause whatever beyond its control. No obligation of Lessor hereunder shall survive the term of the lease of any Equipment or sooner termination of this Agreement, and should Lessor permit the use of any Equipment beyond the term specified therefor, the obligations of Lessee hereunder shall continue; and such permissive use shall not be construed as a renewal of the term thereof nor as a waiver of any right or continuation of any obligation of Lessor hereunder; and Lessor may take possession of any such Equipment at any time. Any cancellation or termination, pursuant to the provisions hereof, by Lessor, of this Agreement, any Schedule, supplement or amendment hereto or the lease of any Equipment hereunder, shall not release Lessee from any then outstanding obligations to Lessor hereunder. Equipment shall at all times remain personal property of Lessor regardless of the degree of its annexation to the real property and shall not by reason of any installation in or affixation to real or personal property become a part thereof.

(b) Time is of the essence of this Agreement. Lessor's failure at any time to require strict performance by Lessee of any of the provisions hereof shall not waive or diminish Lessor's right thereafter to demand strict compliance therewith or with any other provision. Lessor's rights hereunder are cumulative and not alternative. Lessee agrees to execute any instrument necessary or expedient for filing, recording, or perfecting the interest of Lessor upon request of Lessor. Lessor is hereby authorized to insert in Schedules hereunder the serial numbers of Equipment and other identifying marks or similar information. Lessee waives all right to trial by jury in any litigation arising herefrom or in relation hereto. All notices required to be given by Lessee hereunder shall be deemed adequately given if sent by registered or certified mail to Lessor at address of Lessor stated herein or at such other place as Lessor may designate. This Agreement and any addendum thereto attached and signed by the parties, and any Supplement now or hereafter signed by the parties, constitute the entire agreement of the parties with respect to the subject matter hereof. No agent or employee of any supplier or

Case: 09-31504    Doc# 70    Filed: 12/08/09    Entered: 12/09/09 14:49:21    Page 7 of 16

manufacturer is authorized to bind Lessor to this Agreement or any Schedule, or to waive, alter, or add to the terms and conditions printed herein and in any Schedule. THIS AGREEMENT, ANY VARIATION, OR MODIFICATION OF THIS AGREEMENT, ANY WAIVER OF ANY OF ITS PROVISIONS OR CONDITIONS, AND ALL SCHEDULES SHALL NOT BE VALID UNLESS IN WRITING AND SIGNED BY AN AUTHORIZED OFFICER OR MANAGER OF LESSOR.

(c) In case of failure of Lessee to comply with any provision of this Agreement, Lessor shall have the right, but shall not be obligated, to effect such compliance in whole or in part, and all moneys spent by, and expenses of, Lessor shall be paid by Lessee forthwith and shall bear interest at the rate of 1/30 of 1% per day but not to exceed the maximum lawful rate if not so paid. Lessor's effecting such compliance shall not be a waiver of Lessee's default. All such moneys spent by, and expenses of, Lessor and any other obligation assumed or incurred by Lessor in effecting such compliance shall constitute additional rent payable to Lessor with the next rental payment. Any provision in this Agreement and any Schedule which are in conflict with any statute, law, or rule applicable shall be deemed omitted, modified, or altered to conform thereto.

(d) The Master Lease and any Schedule incorporating the Master Lease shall be governed by Ohio law and shall constitute the entire agreement between the parties superseding any oral or other written agreement, express or implied.

(e) If Lessee has more than one obligation with CFC Investment Company, it is agreed that default on any obligation constitutes default as to all. Any collateral held as security for one obligation is deemed as security for and collateral for all obligations between Lessee and Lessor.

XIV. DISCLAIMER: LESSOR MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO EQUIPMENT. LESSEE UNDERSTANDS AND AGREES THAT NO WARRANTY IS TO BE IMPLIED WITH RESPECT TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, THE FITNESS OF THE EQUIPMENT FOR A PARTICULAR PURPOSE, OR WITH RESPECT TO INFRINGEMENT OR THE LIKE. NOTHING HEREIN CONTAINED SHALL BE CONSTRUED AS DEPRIVING THE LESSEE OF WHATEVER RIGHTS, IF ANY, LESSEE MAY HAVE AGAINST THE SUPPLIER OF THE EQUIPMENT.

XV. WHEN LESSEE SIGNS AND DELIVERS A CERTIFICATE OF DELIVERY AND INSTALLATION FOR EQUIPMENT, ITS OBLIGATIONS TO PAY ALL RENT AND OTHER AMOUNTS WHEN DUE FOR THE EQUIPMENT AND OTHERWISE TO PERFORM AS REQUIRED UNDER THE MASTER LEASE AND RELATED SCHEDULE ARE UNCONDITIONAL, IRREVOCABLE AND INDEPENDENT. THESE OBLIGATIONS ARE NOT SUBJECT TO CANCELLATION, TERMINATION, MODIFICATION, REPUDIATION, EXCUSE OR SUBSTITUTION BY LESSEE. LESSEE IS NOT ENTITLED TO ANY ABATEMENT, REDUCTION, OFFSET, DEFENSE, OR COUNTERCLAIM WITH RESPECT TO THESE OBLIGATIONS FOR ANY REASON WHATSOEVER, WHETHER ARISING OUT OF DEFAULT OR OTHER CLAIMS AGAINST LESSOR OR THE MANUFACTURER OR SUPPLIER OF THE EQUIPMENT, DEFECTS IN OR DAMAGE TO THE EQUIPMENT, ITS LOSS, DESTRUCTION OR OTHERWISE.

IN WITNESS WHEREOF, the parties hereto have executed these presents as of the _24_ day of _October_, 2005.

CFC Investment Company, Lessor

By _____
Signature and Title of Lessor — V.P.

D. W. Swan V.P.
Printed Name & Title of Lessor

Feed The Meter, LLC
dba/Asqew Grill, Lessee

By _____ Managing Member
Signature and Title of Lessee

Mark Nicandri   Managing Member
Printed Name & Title of Lessee

INITIALLED BY _____

Case: 09-31504    Doc# 70    Filed: 12/08/09    Entered: 12/09/09 14:49:21    Page 8 of 16

# CFC INVESTMENT COMPANY
A Subsidiary of Cincinnati Financial Corporation

P.O. BOX 145496
CINCINNATI, OHIO 45250-5496
(513) 870-2203

## EQUIPMENT LEASE SCHEDULE # 1

ACCOUNT # 20050887

1. DESCRIPTION OF EQUIPMENT: (2) BACKBAR REFRIGERATOR GLASS DOOR (1) BEV AIR #DD78 DRAFT BEER COOLER (1) 5 WELL ELECTRIC STEAMTABLE 220V (1) 200 VOLT 6' ELECTRICAL CORD CONTROL KNOBS, INDICATOR, LIGHTS

2. LOCATION OF EQUIPMENT: 3583 16th Street, San Francisco, CA 94114

3. INITIAL TERM OF LEASE  Five Years (No. of Years)  COMMENCING: Upon acceptance of equipment.

4. RENT PAYMENTS WILL BE MADE  Monthly  in advance.

    A. Total Rentals Due (includes all lease charges) .................................................. $ 39,780.00
    B. Monthly  Rental .................................................................................................. $ 663.00
    C. Advance Rental  & Last ...................................................................................... $ 1,326.00
    D. Security Deposit ................................................................................................. $ 0.00

5. SALES/USE TAXES:

    Applicable: State and local sales taxes at the rate of 0.00 % ($ 0.00 ) are to be remitted with each rental.

    Exempt: Lessee must furnish Lessor with an exemption certificate if exempt status is claimed.

6. PURCHASE OPTION: Upon payment of all initial term lease rentals, Lessee will purchase the equipment for the consideration of $1.00.

7. ADDITIONAL PROVISIONS: "All payments will be made electronically via CFC Investment Company's ACH program. Failure to do so will constitute default by the Lessee/Guarantors/Makers."

8. DOCUMENTATION FEE: $100.00

APPROVED AND AGREED to this 24 day of OCTOBER 2005 as a schedule to and part of Master Lease Agreement dated the 24 day of October, 2005.

CFC Investment Company
Lessor

By _____
Signature & Title of Lessor

D.W. SLOAN V.P.
Printed Name & Title of Lessor

Feed The Meter, LLC
dba/Asqew Grill
Lessee

By _____ Managing Member
Signature & Title of Lessee

Mark Nicandri  Managing Member
Printed Name & Title of Lessee

# EXHIBIT "B"

# UCC FINANCING STATEMENT

20050887

05-7047643642
11/02/2005 17:00
FILED
CALIFORNIA
SECRETARY OF STATE
SOS
5717090002   UCC 1 FILING

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
CAROL KNUCKLES 513-870-2203

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

CFC INVESTMENT COMPANY
PO BOX 145496
CINCINNATI OH 45250

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| FEED THE METER LLC | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 3350 STEINER STREET | SAN FRANCISCO | CA | 94123 | |
| 1d. SEE INSTRUCTIONS | 1e. TYPE OF ORGANIZATION: CORPORATION | 1f. JURISDICTION OF ORGANIZATION: CALIFORNIA | 1g. ORGANIZATIONAL ID #, if any | ✓ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| ASQEW GRILL | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 3350 STEINER STREET | SAN FRANCISCO | CA | 94123 | USA |
| 2d. SEE INSTRUCTIONS | 2e. TYPE OF ORGANIZATION: CORPORATION | 2f. JURISDICTION OF ORGANIZATION: CALIFORNIA | 2g. ORGANIZATIONAL ID #, if any | ✓ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CFC INVESTMENT COMPANY | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| PO BOX 145496 | CINCINNATI | OH | 45250 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

(2) BACKBAR REFRIGERATOR GLASS DOOR (1) BEV AIR #DD78 DRAFT BEER COOLER (1) 5 WELL ELECTRIC STEAMTABLE 220V (1) 200 VOLT 6' ELECTRICAL CORD CONTROL KNOBS, INDICATOR, LIGHTS

**5. ALTERNATIVE DESIGNATION** [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

**6.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum (if applicable)

**7.** Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

EXHIBIT "C"



SECRETARY OF STATE
STATE OF CALIFORNIA

## UCC Filing Acknowledgement

11/04/2005

Page 1 of 1

CFC INVESTMENT COMPANY
P.O. BOX 145496
CINCINNATI OH 45250-5496

Filing Fee: $10.00

Total Fee: $10.00

The California Secretary of State's Office has received and filed your document. The information below reflects the data that was indexed in our system. Please review the information for accuracy. Included is an image of the filed document to assist you in your review. If you find a potential error, please notify the UCC Section at the number listed below at your earliest convenience.

Filing Type: **Financing Statement**  File Date: **11/02/2005**  File Time: **17:00**
Filing Number: **05-7047643642**  Lapse Date: **11/02/2010**

Debtor(s):
ORGANIZATION   FEED THE METER LLC
               3350 STEINER STREET SAN FRANCISCO CA USA 94123

ORGANIZATION   ASQEW GRILL
               3350 STEINER STREET SAN FRANCISCO CA USA 94123

Secured Party(ies):
ORGANIZATION   CFC INVESTMENT COMPANY
               PO BOX 145496 CINCINNATI OH USA 45250

Filing by the Secretary of State is not conclusive proof that all conditions for securing priority have been met. Ensuring that accurate information is on the document to be filed is the responsibility of the filing party. If this filing is challenged, the Secretary of State does not guarantee that the filing is legally sufficient to secure priority under UCC Article 9 and expressly disclaims any liability for failure of the filing party to secure priority resulting from the information contained in the filed document, or the lack of information on the filed document.

UNIFORM COMMERCIAL CODE 1500 11TH STREET, 2ND FL. · SACRAMENTO, CA 95814 · PO BOX 942835 · SACRAMENTO, CA 94235-0001 · (916) 653-3516 · HTTPS://UCCCONNECT.SS.CA.GOV

PROGRAMS ARCHIVES, BUSINESS PROGRAMS, ELECTIONS, INFORMATION TECHNOLOGY, CALIFORNIA STATE HISTORY MUSEUM, MANAGEMENT SERVICES, SAFE AT HOME, DOMESTIC PARTNERS REGISTRY, NOTARY PUBLIC, POLITICAL REFORM

Case: 09-31504   Doc# 70   Filed: 12/08/09   Entered: 12/09/09 14:49:21   Page 13 of 16

EXHIBIT "D"



# ECONOMY RESTAURANT FIXTURES

1200 7TH STREET, SAN FRANCISCO, CALIFORNIA 94107 PHONE (415) 626-5611
801 RICHARDS BLVD, SACRAMENTO, CALIFORNIA 95814 PHONE (816) 447-8600
Special order merchandise is non-returnable. Authorized returns subject to 20% restocking charge.
Debtor is required to pay ERF for attorney fees and cost incurred to collect bad debts.

| | | | | | | | 10/24/05 | 3:27 |
|---|---|---|---|---|---|---|---|---|
| 24P568 | | ORDR # 715884 | | CASH/COD | | | | |

```
SOLD TO:                    SHIP TO:                DUE DATE: 10/25/05         DOC# 216745
CFC INVESTMENT CO           FEED THE METER, LLC                                 ************
6128 B GILMORE ROAD, #213   DBA ASQUEW GRILL                 TERM#241           * INVOICE *
                            3583 16TH ST                                        ************
FAIRFIELD    OH 45014       SAN FRANCISCO  CA 94114   SLSPR:  WB WILL BARBER
(800) 262-9638                                        TAX :   001 SAN FRANCISCO COUNTY
                                                                                ORDR  715884
```

| # | QTY | | ITEM | DESCRIPTION | PRICE | | | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 1 | 2 | EA | SOBLBB25MY | BACKBAR REF GLASS DOOR | 8993.50 | | 8993.50 /EA | 17,987.00 |
| 2 | 1 | EA | SOBEVKD878 | BEV AIR KD878 DRAFT BEER COOLE | 4999.00 | 1 | 4999.00 /EA | 4,999.00 |
| 3 | 1 | EA | SLP4F5E | 5 WELL ELECTRIC STEAMTABLE-208V | 2399.00 | 1 | 2399.00 /EA | 2,399.00 |
| 4 | | | | 208 VOLT, 6' ELECTRICAL CORD, | | | | |
| 5 | | | | INFINITE | | | | |
| 6 | | | | CONTROL KNOBS, INDICATOR | | | | |
| 7 | | | | LIGHTS, | | | | |
| 8 | | | | SINGLE PHASE WIRING, 750 WATT | | | | |
| 9 | | | | ELEMENTS, STAINLESS STEEL | | | | |
| 10 | | | | UNDERSHELF, FIBERGLASS | | | | |
| 11 | | | | INSULATION BETWEEN WELLS, 1" | | | | |
| 12 | | | | THICK POLY CUTTING BOARD (8"DEEP) | | | | |

```
                      ** AMOUNT CHARGED TO STORE ACCOUNT **   27,542.73   TAXABLE        25385.00
                                                                          NON-TAXABLE        0.00
                                                                          SUBTOTAL       25385.00

X _____
    RECEIVED BY                                                           TAX AMOUNT      2157.73
                                                                          TOTAL AMOUNT   27542.73
```

| | |
|---|---|
| 1 | **PROOF OF SERVICE BY MAIL** |
| 2 | STATE OF CALIFORNIA, COUNTY OF LOS ANGELES |
| 3 | COURT: U.S. Bankruptcy Court, Northern District of California |
|   | CASE TITLE: Feed The Meter, LLC. |
| 4 | CASE NUMBER: 09-31504 |
| 5 | I, Ann Revilla, declare as follows: |
| 6 | I am employed with the law firm of Trovillion, Inveiss & Demakis, 50 East Foothill Boulevard, Suite 203, Arcadia, California 91006. I am readily familiar with the business practices of this office for collection and processing of correspondence for mailing with the United States Postal Service; I am over the age of eighteen and I am not a party to this action. |
| 8 | On December 8, 2009, I served the following: |
| 9 | **REQUEST BY CREDITOR, CFC INVESTMENT COMPANY TO TRUSTEE TO ISSUE NOTICE OF TRUSTEE'S INTENT TO ABANDON INTEREST AND ASSETS** |
| 11 | **NO HEARING REQUIRED UNLESS OBJECTIONS FILED PURSUANT TO LOCAL RULE** |
| 12 | [ X ] BY MAIL: on the below parties in this action by placing a true copy (copies) thereof in a separate envelope(s), addressed as shown, for collection and mailing on the below indicated day pursuant to the ordinary business practice of this office which is that correspondence for mailing is collected and deposited with the U.S. Postal Service on the same day in the ordinary course of business: |

BERNARD F. KISTLER, JR.  
Attorney at Law  
3700 Crestwood Parkway, N.W., Suite 440  
Duluth, GA 30096

Attorneys for Debtors, Feed The Meter, LLC:  
LAW OFFICES OF MICHAEL H. LEWIS  
505 Sansome Street, #475  
San Francisco, CA 94111

DAVID W. SLOAN, Vice President  
CFC INVESTMENT COMPANY  
P.O. Box 145496  
Cincinnati, OH 45250-5496

U.S. TRUSTEE'S OFFICE  
235 Pine Street, Suite 850  
San Francisco, CA 94104

[ ] BY PERSONAL DELIVERY: I caused such document(s) to be delivered by hand to the:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on December 8, 2009, at Arcadia, California.

_____  
Ann Revilla

**REQUEST BY CREDITOR CFC INVESTMENT COMPANY TO TRUSTEE TO ISSUE NOTICE OF TRUSTEE'S INTENT TO ABANDON INTEREST AND ASSETS**

- 3 -

Case: 09-31504   Doc# 70   Filed: 12/08/09   Entered: 12/09/09 14:49:21   Page 16 of 16